HOLMES, Judge
(dissenting):
I respectfully dissent.
This case was originally assigned to the author of this dissent. The majority of this *687 court did not agree with my proposed opinion. My proposed opinion expresses my view of this appeal and is as follows:
The dispositive issue is whether an insurer must apply unpaid benefits due its insured to the payment of an overdue premium to prevent the loss of coverage.
The record reveals the following facts:
Through his employer Caudle contracted with Blue Cross for group hospitalization and major medical insurance. The group policy provided for automatic termination in the event Caudle quit his job. Caudle quit work and the group insurance contract terminated on March 24, 1976.
The group policy also provided that, upon termination of the contract, the employee could apply for an individual hospitalization and major medical insurance policy. This application had to be made within thirty days of the termination of the group contract.
On March 29, 1976, before the expiration of the thirty day period, Caudle applied for individual coverage. Sometime around April 5, 1976, Blue Cross sent Caudle an identification card and a copy of a contract for individual insurance coverage. . The identification card stated that the effective date of coverage was March 25, 1976. Blue Cross also sent Caudle a notice of non-payment of premiums. This notice stated that $139.86 was due on March 25,1976, and that unless Blue Cross received payment within thirty days after March 25, Caudle’s insurance contract would terminate automatically as of the due date.
Meanwhile, on March 20, 1976, Caudle’s wife entered the hospital. She was discharged on March 27, 1976.
At trial the parties stipulated that Mrs. Caudle would be covered by the individual policy if that policy was found to be in force and that, if the policy was in force, her covered charges were $503.70.
A claim for the charges was properly filed and the claim was paid. Blue Cross subsequently obtained a refund of the payment from the hospital and the hospital then collected from Caudle.
No premium payments have ever been received by Blue Cross from Caudle for coverage beyond March 24, 1976.
At the outset, 1 note that the instant case was submitted to the trial court sitting without a jury on the basis of the pleadings, stipulations of fact, and exhibits. Under such circumstances, the findings of the trial court do not carry any presumption of correctness, and the appellate court must consider the evidence de novo in light of applicable legal principles. State v. Tri-State Pharmaceutical, 371 So.2d 910 (Ala.Civ.App.), cert. denied, 371 So.2d 914 (Ala.1979).
The issue, as I perceive it, is whether the individual insurance policy was in force on the dates of Mrs. Caudle’s hospitalization. I would note that Caudle’s contract with Blue Cross for group insurance coverage terminated by its own terms on March 24, 1976, after Caudle quit his job. Therefore, any claim against Blue Cross can only arise under the individual insurance contract.
There is evidence in the instant case that Blue Cross extended individual insurance coverage to Caudle and his wife on a conditional basis and that the conditional coverage went into effect on March 25, 1976. Specifically, the identification card sent to Caudle stated that coverage became effective on March 25, 1976. The premium notice stated that the premium was due on March 25,1976, and that coverage would be terminated as of the due date if the premium was not paid within thirty days. Stated differently, if the premium was paid within the thirty day period, coverage would be extended retroactively to March 25, 1976. If the premium was not paid within that time period, there would be no coverage.
It is clear from the record that Caudle did not pay the premium within the thirty day period. However, Caudle and his wife did receive hospital services within that period.
In Blue Cross-Blue Shield of Alabama v. Colquitt, 42 Ala.App. 471, 475, 168 So.2d 251, 254, cert. denied, 277 Ala. 696, 168 So.2d 256 (1964), the court opined that “[o]ur courts are committed to the rule that when a loss occurs within the grace period, *688 giving rise to an obligation by the underwriter to the insured for an unencumbered sum at least equal to the unpaid premium, then the premium is deemed to have been paid ...” so as to avoid the loss of coverage.
I find the instant case to be governed by this rule. A loss did occur during the thirty day period. Caudle’s wife was hospitalized. Blue Cross was obligated to pay the loss, if the premium was paid within the thirty day period. As indicated, the benefits conditionally due Caudle equaled $503.70. The premium was $139.86. Under Colquitt, Caudle was entitled to have the benefits contingently due him applied to the payment of the premium in order to avoid the loss of coverage. Therefore, I find that the individual policy was in force on the dates Mrs. Caudle was hospitalized and that Cau-dle is entitled to receive $363.84, the difference between the total benefits due and the premium, as benefits under the policy.
Blue Cross, through able counsel, contends that two provisions of the insurance contract and the holding of Blue Cross-Blue Shield of Alabama v. Craig, 46 Ala.App. 352, 242 So.2d 398 (1970), preclude application of the Colquitt rule in this case. Section VI-3 of the policy states:
“A grace period of thirty (30) days shall be allowed within which the Subscriber may make payment ... of any fees except the initial fee. ... ”
and Section V-3 provides that:
NO BENEFITS SHALL BE PROVIDED HEREUNDER WITH RESPECT TO:
3. Hospital service rendered or received during the grace period provided by Section VI-3 if actual payment of fees then due is not received by the Corporation within such grace period. Receipt by a Member of Hospital Service during the grace period shall not constitute payment of fees. (Emphasis supplied.)
In Craig, supra, the court held that the above emphasized language expressly precluded the use of any part of benefits supposedly accruing under the policy for the payment of an overdue premium. In other words, where this language appears in connection with a grace period the Colquitt rule does not apply.
However, I find that the language of Section V-3 does not preclude recovery in the instant case. As stated above, the group insurance contract between Caudle and Blue Cross terminated and ceased to exist on «March 24, 1976. The individual insurance contract between Caudle and Blue Cross was, therefore, a new contract. The $139.86 due on March 25, 1976, was the first premium due under that new contract. Section VI-3 states that a grace period shall be allowed for the payment of any fee “except the initial fee.” The premium due March 25, 1976, was clearly the initial fee under the new contract. Therefore, I find that the thirty day period that Blue Cross allowed for the payment of the first premium was not the grace period provided by Section VI-3. The exclusionary language of Section V-3, by its own terms, applies only when hospital services are received during a Section VI-3 grace period. Since the hospital services received by the Cau-dles were not received during a Section VI-3 period, the exclusionary language of Section V-3 does not prevent application of the Colquitt rule in the instant case.
For the reasons stated above, I would affirm the trial court.